UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FILED
APR 1 0 2015
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **4:15CR177 TCM** |
| ) | |
| OZARK MOUNTAIN TECHNOLOGIES, ) | |
| ) | |
| Defendant. ) | |

## MISDEMEANOR INFORMATION

The United States Attorney charges that:

### Introduction

1. At all times relevant to this Information, Ozark Mountain Technologies ("OMT") was a metal finishing and anodizing facility located at 106 Midland Drive, Cuba, Missouri. OMT specialized in anodizing and painting parts for the aerospace, defense and other aluminum industries.

2. Wastewater from OMT's processing plant flowed into its wastewater facility which consisted of two wastewater pits. Inside the pits, OMT would treat the wastewater until the pH was in compliance with permit standards. Once the wastewater's pH was in permit range, OMT would discharge the wastewater towards the city of Cuba's wastewater treatment facility.

3. At one of the wastewater pits ("second pit"), there were three pumps which pumped the water from OMT to an outfall on the west side of OMT's building. At the top of the second pit, there was a pipe with a valve on it. If the valve on the second pit was open and the wastewater inside the pit reached the height of the pipe, water would flow out of it, down OMT's outfall and ultimately to the city of Cuba's wastewater treatment facility without the pH being treated.

4.     OMT installed an alarm to sound if the pH of the wastewater was too high or too low. This system was connected via computers to the valve in the pipe at the top of the second wastewater pit as well as valves connected to the main water pipes that discharged from the facility's wastewater pumping system.

5.     If the pH was too high or low, the alarm would sound and the valves were all designed to automatically close to prevent wastewater discharges from the facility.   Once the valves closed, the wastewater pits could overflow if the wastewater pH was not properly treated and the valves were not re-opened to allow discharge from the facility.   Once the wastewater was properly treated, and within the permit levels, the alarm was designed to shut off and the valves would then be re-opened.

6.     However, the controls on the system were inadequate.   For example, the valve system in the second wastewater pit was not properly sealed.   As such, the valve at the top of the second wastewater pit remained open at all times even while the pH in the wastewater pits was too high or too low.   In addition, there were not adequate controls in place to document when changes were made to the values placed in the computer system to control the alarm system that controlled the shutdown of the valves.   Such changes could have resulted in the computer system not sounding an alarm when pH levels were too high or too low and allowing such wastewater to discharge.   Further, there were not proper protections in place to control the valve in the pipe at the top of the second wastewater pit.   As such, it was possible to manually adjust this valve to remain open even when the alarm sounded.

### The Federal Water Pollution Act ("Clean Water Act")

7.     The Clean Water Act ('CWA") directed the United States Environmental Protection Agency ("EPA") to promulgate regulations establishing pretreatment standards for the

introduction of pollutants into Publicly Owned Treatment Works ("POTW") "which are not susceptible to treatment by such [POTW] or which would interfere with the operation of such [POTW]." 33 U.S.C. § 1317(b)(1). The term "pretreatment" includes the reduction, elimination, or alteration of the pollutant content of wastewater prior to introducing such wastewater into a POTW. 40 C.F.R. § 403.3(s).

8. EPA promulgated regulations prohibiting certain pollutants from introduction to a POTW. These pollutants are set forth at 40 C.F.R 403.5. The CWA authorizes the EPA to delegate to a state the authority to administer its own pretreatment permitting program. 33 U.S.C. § 1342(b). To receive pretreatment delegation, the state must have sufficient authority to issue state permits that "insure" that POTWs will comply with the requirements of 33 U.S.C. § 1317. In addition, the state program must require inspections, monitoring, and reporting to the same extent required in the CWA. Specifically, 33 U.S.C. § 1342(b)(8) requires that the state "insure that any permit for a discharge from a [POTW] includes conditions to require the identification in terms of character and volume of pollutants of any significant source including pollutants subject to pretreatment standards . . . and a program to assure compliance with such pretreatment standards".

9. The Missouri Department of Natural Resources ("MDNR") is the state agency with the authority to administer the federal pretreatment program in Missouri pursuant to 33 U.S.C. § 1342, implementing regulations. As such, MDNR is the "Approval Authority" as defined by 40 C.F.R. § 403.3(c) on or about February 13, 2008. MDNR delegated the authority to issue pretreatment permits and promulgate regulations for its own POTW to the City of Cuba, Missouri. Local limits were originally approved by MDNR in 2002, and were revised and adopted by the City on July 6, 2009, pursuant to Ordinance 1057. Section 24-274 of the Cuba City Code provides the instantaneous maximum allowable discharge for pH of 5.3 to 12.0 units.

## OMT Permit Requirements

10.     On June 24, 2009, OMT was issued a pretreatment permit from the City of Cuba.  The permit was to take effect on July 1, 2009 and was to expire on June 30, 2012.  The permit included daily maximum and monthly average limitations for certain pollutants in OMT's wastewater flow. The pH limitations were set at a maximum of 5.3 to 12.0 milligram/liter per day.

11.     On June 18, 2012, OMT was issued a new pretreatment permit from the City of Cuba. The permit was to take effect on July 1, 2012 and was to expire on June 20, 2017.  The permit's limitations were identical to the 2009 permit.

12.     The 2009 and 2012 permits required OMT to notify the city of Cuba within 5 days of the occurrence if any spills or accidental discharges.

## COUNT ONE

13.     Paragraphs 1 through 12 are re-alleged and incorporated herein by reference.

14.     On or about April 20, 2013, in Crawford County, in the Eastern District of Missouri, the defendant, **OZARK MOUNTAIN TECHNOLOGIES**, negligently violated requirements imposed in a pretreatment program approved under the Clean Water Act, Title 33, U.S.C. Section 1342(b)(8), that is, the company defendant discharged and caused the discharge of wastewater with a pH below 5.3 into the city of Cuba's wastewater treatment facility from the OMT facility.

All in violation of Title 33, United States Code, Section 1319(c)(1)(A) and Title 18, United States Code, Section 2.

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney

DIANNA R. COLLINS
Assistant United States Attorney

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| EASTERN DIVISION | ) |
| EASTERN DISTRICT OF MISSOURI | ) |

I, Dianna R. Collins, Assistant United States Attorney for the Eastern District of Missouri, being duly sworn, do say that the foregoing information is true as I verily believe.

_____
DIANNA R. COLLINS

Subscribed and sworn to before me this 10th day of April 2015.

_____
CLERK, U.S. DISTRICT COURT

By: _____
DEPUTY CLERK

2